# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAN AGUILAR, | Case No.  1:12-cv-00472-SAB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Arman Aguilar ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from degeneration of the lumbar and thoracic spine, depression and alcohol dependence.  (AR 19.)  The record also indicates that Plaintiff suffers from liver failure, Hepatitis C, bipolar disorder and schizophrenia.  (AR 977, 979.)  For the reasons set forth below, Plaintiff's appeal from the administrative decision of the Commissioner is granted and that this

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.  (ECF Nos. 5, 10.)

1  action will be remanded for further administrative proceedings on the issue of whether Plaintiff is

2  capable of performing her past relevant work.

3  **I.**

4  **FACTUAL AND PROCEDURAL BACKGROUND**[2]

5  Plaintiff filed his applications for Social Security benefits on July 2, 2008 and July 17,

6  2008.  (AR 16.)  Plaintiff alleged a disability onset date of April 6, 2004.  (AR 16.)  Plaintiff's

7  applications were initially denied on October 27, 2008 then denied upon reconsideration on April

8  24, 2009.  (AR 16.)  On May 6, 2009, Plaintiff requested a hearing.  (AR 16.)

9  On July 26, 2011, a video hearing took place before Administrative Law Judge Regina L.

10  Sleater ("the ALJ").  (AR 16.)  Plaintiff did not personally appear at the hearing because he was

11  incarcerated at the time.  (AR 16.)  However, Plaintiff was represented by an attorney at the

12  hearing.  (AR 16.)  At the hearing, Dr. Walter Lewin testified as a medical expert and Thomas

13  Dachelet testified as a vocational expert ("VE").  (AR 16.)

14  On August 5, 2011, the ALJ issued her decision finding that Plaintiff is not disabled.  (AR

15  16-26.)  On February 8, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1.)

16  **A.      Hearing Testimony**[3]

17  Dr. Walter Lewin testified at the hearing on July 26, 2011.  Dr. Lewin is a board certified

18  psychiatrist working for the Social Security Administration.  (AR 90-91.)  Dr. Lewin testified that

19  Plaintiff did not suffer from any marked limitations.  (AR 92.)  Dr. Lewin opined that Plaintiff

20  had moderate limitations in performing detailed tasks, in maintaining attention for extended

21  periods, in completing the work week, in dealing with the public and in establishing independent

22  goals.  (AR 93.)

23  Thomas Dachelet testified at the hearing as a VE.  The ALJ provided the VE with the

24  following first hypothetical:

25

26  _____

[2] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 12.)

27

28  [3] The Court notes that the transcript for the July 26, 2011 hearing has a substantial number of "[INAUDIBLE]" entries, indicating that the transcriber could not understand what was being said.  (See AR 91-119.)

- Can lift 25 pounds occasionally, 15 pounds frequently;

- Can sit stand and walk six hours;

- Can frequently climb stairs, balance and kneel;

- Can occasionally climb ladders, ropes and scaffoldings

- Can occasionally stoop, crouch and crawl;

- Can occasionally be exposed to unprotected heights and open machinery;

- Can perform basically simple jobs that are occasionally detailed;

- Can perform jobs with a disruption of pace or persistence several times a week;

- Can perform "non-production pace" jobs or "occasional production pace" jobs;

- Can have occasional public contact; and

- Can occasionally set independent goals.

(AR 105-106.)  The VE testified that Plaintiff could not perform his past work as a machine operator, janitor and packer (egg produce).  (AR 105, 107.)  The VE cited the inability to perform the full range of medium level work as preventing someone with the limitations set forth in the hypothetical from performing Plaintiff's past relevant work.  (AR 107.)

    With respect to other work, the VE appeared to indicate that a "non-production pace" limitation would preclude any competitive work.  (AR 107.)  The ALJ then suggested that the VE misunderstood what the "non-production pace" limitation meant and that someone with such a limitation should still be able to perform jobs that did not require quotas.  (AR 107-111.)  The VE "suggest[ed] a job identified as a sexton[4]," but the transcript is not clear with respect to whether the VE was suggesting that this job could be performed by someone with the limitations presented in the first hypothetical.  (AR 111.)

    The ALJ established a second hypothetical, with the following limitations:

- Can lift 25 pounds occasionally, 15 pounds frequently;

- Can perform simple, occasionally detailed work;

---

[4] The VE described a sexton as "a person who takes care of church buildings and furnishings."  (AR 111.)  However, later the VE stated "Sexton, and I [INAUDIBLE] spelled it as a machine used in ships."  (AR 112.)  The VE may have been referring to a 'sextant.'

- Can have occasional public contact; and

- Can occasionally set independent goals

(AR 112.)   Under the second hypothetical, the VE opined that such a person could work as a sexton, janitor, house cleaner or packer/packager.  (AR 112-113.)   There were 2,961 sedentary jobs and 42,929 light jobs within California and 21,485 sedentary jobs and 311,534 light jobs across the country that could be performed by a person with the limitations set forth in the second hypothetical.  (AR 113-114.)

Plaintiff's attorney presented a third hypothetical, with the following limitations:

- Can lift 25 pounds occasionally, 15 pounds frequently;

- Moderately limited in the ability to perform detailed tasks;

- Moderately limited in ability to maintain attention for extended periods of time;

- Moderately limited in ability to complete normal work day or work week without interruption from psychologically based symptoms;

- Moderately limited in ability to deal with the general public; and

- Moderately limited in ability to make realistic goals.

(AR 114-115.)   The VE opined that such a person is "probably not going to be employed very long if they gain employment at all."  (AR 115.)

Plaintiff's attorney also presented a fourth hypothetical, with the following limitations:

- Occasionally experiences pain, fatigue or other symptoms severe enough to interfere with attention and concentration;

- Can sit less than two hours;

- Can stand/walk less than two hours;

- Must take unscheduled breaks six times in an eight hour day for 15 minutes each;

- Can rarely lift and carry 20 pounds and occasionally lift 10 pounds;

- Can occasionally twist, stoop, bend, crawl, climb ladders and climb stairs; and

- Will likely be absent from work more than four days per month as a result of his impairments or treatment.

(AR 115-116.)   The VE opined that such a person could not work.  (AR 116.)

**B.     The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2010;

- Plaintiff engaged in substantial gainful activity from November 15, 2007 through January 26, 2008;

- Plaintiff has not engaged in substantial gainful activity for a continuous 12-month period;

- Plaintiff has the following severe impairments: degeneration of the lumbar and thoracic spine, depression and alcohol dependence;

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to perform work with the following limitations: lift and carry fifteen pounds frequently and twenty-five pounds occasionally; sit, stand or walk for six hours; frequently climb ramps and stairs, balance and kneel; occasionally climb ladders, ropes and scaffolds, stoop, crouch and crawl; must avoid moderate exposure to hazards; have occasional public contact; occasionally make independent goals; occasionally do detailed work; never do complex tasks; and could do simple tasks and would be off pace if extensive attention is required;

- Plaintiff is capable of performing his past relevant work as an agricultural packer; and

- Plaintiff has not been under a disability from April 6, 2004 through the date of the ALJ's decision.

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).   "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).   "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

**III.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred by (1) failing to find that Plaintiff was disabled based upon the testimony of the VE, (2) failing to adopt the opinion of Dr. Garcia, and (3) determining that a third party lay witness, Ms. Scott, lacked credibility.  However, as an initial matter, the Court will address the argument raised by Defendant: that the ALJ's determination was justified because, at Step Four of the sequential analysis, the ALJ determined that Plaintiff could perform his past relevant work as an agricultural packer.

**A.     The ALJ Erred In Determining That Plaintiff Could Perform His Past Relevant Work As An Agricultural Packer**

Defendant argued that the ALJ's analysis was proper because, irrespective of any errors made at Step Five of the sequential analysis, the ALJ properly determined at Step Four that Plaintiff could perform his past relevant work as an agricultural packer.  (Def.'s Cross-Mot. for Summ. J.; Mem. of P. & A. in Supp. Thereof and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n") 10:13-11:21.)

/ / /

6

1    In a "Disability Report," Plaintiff reported that he worked as a "Packer" in a "Packing

2    House" between November 2007 and January 2008.  (AR 194.)  In response to the question "Why

3    did you stop working?" Plaintiff wrote, "I was incarcerated."  (AR 193.)  The ALJ reasoned that

4    "[n]othing has changed in the claimant's medical record since the date he last worked, therefore

5    he can still do this work."  (AR 26.)

6        Although Plaintiff filed a reply, his reply did not address this issue.

7        Plaintiff bears the burden of proving that he is unable to perform his past relevant work at

8    Step Four of the sequential analysis.  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001).

9    Although Plaintiff bears the burden of proof, the ALJ has a duty to make requisite factual findings

10   to support his conclusion at Step Four.  <u>Id.</u>  "This requires specific findings as to the claimant's

11   residual functional capacity, the physical and mental demands of the past relevant work, and the

12   relation of the residual functional capacity to the past work."  <u>Id.</u> at 845 (citing SSR 82-62).  In

13   order to support the conclusion that the claimant can perform his or her past relevant work, the

14   ALJ must find that either (1) the Plaintiff is able to perform the "actual demands and job duties of

15   a particular past relevant job," or (2) the Plaintiff is able to perform the functional demands and

16   job duties of the occupation as "generally required by employers throughout the national

17   economy."  <u>Id.</u> (citing SSR 82-61.)

18       Here, the ALJ inferred that Plaintiff was capable of performing his prior work as a

19   "Packer" based upon the fact that Plaintiff stated that he stopped working because he was

20   incarcerated.  The ALJ further noted that "[n]othing has changed in the claimant's medical record

21   since the date he last worked."  (AR 26.)  However, the ALJ failed to cite any specific portion

22   from the medical record in support of this proposition and the Court's own review of the medical

23   record failed to find support for this proposition.  The ALJ's own findings are inconsistent with

24   the proposition that "nothing has changed" in Plaintiff's medical record between the date Plaintiff

25   last worked (January 2008) and the date of the disability determination August 5, 2011.  The ALJ

26   noted that Plaintiff received an x-ray in April 2008 that revealed mild spondylosis.  (AR 21.)

27   Plaintiff was diagnosed with Hepatitis C in May 2008.  (AR 21.)  Plaintiff received a CT scan of

28   his abdomen revealing "fatty liver infiltration and hepatomegaly" in November 2008.  (AR 21.)

1    Moreover, the ALJ noted that, over the years, Plaintiff "had many different diagnoses, some quite

2    different from the others..."   (AR 25.)   These findings are not consistent with the ALJ's

3    determination that Plaintiff's medical condition remained constant since January 2008.

4    Accordingly, the ALJ's determination is not supported by substantial evidence.

5         Moreover, the inference made by the ALJ is tenuous, because Plaintiff's stint as a

6    "Packer" was rather short (2-3 months) leaving unanswered whether Plaintiff satisfactorily

7    performed his job duties.

8         Pinto and Social Security Ruling 82-62 require the ALJ to make specific findings about

9    the physical and mental demands of Plaintiff's work as a Packer and make specific findings as to

10   how those demands compare to Plaintiff's current residual functional capacity.   The ALJ failed to

11   do so here, and therefore the Court concludes that the ALJ erred.

12        The facts here are distinguishable from the case cited by Defendant: Gregory v. Bowen,

13   844 F.2d 664 (9th Cir. 1988).   In Gregory, "Gregory's testimony indicated that she retains the

14   physical capacity to do her prior work."   Id. at 666.   Here, there was no testimony from Plaintiff

15   that indicated that he retained the power to return to his prior work.   Moreover, in Gregory,

16   "substantial evidence indicated that the condition of Gregory's back had remained constant for a

17   number of years and that her back problems had not prevented her from working over that time."

18   Id. at 667.   As discussed above, substantial evidence does not support the conclusion that Plaintiff

19   could work as a packer because (1) "substantial evidence" does not support the conclusion that

20   Plaintiff's medical condition was constant since he last worked, (2) Plaintiff's relatively short

21   stint as a packer does not supply "substantial evidence" for the conclusion that Plaintiff

22   performed his job satisfactorily or could return to his former job, and (3) there is no evidence as

23   to the actual demands of Plaintiff's former job, which Pinto and SSR 82-62 expressly require.

24        The Court further finds that the ALJ's error was not harmless.   On remand, the record

25   could be further developed to determine what the actual demands of Plaintiff's prior job were and

26   to determine whether those demands could be performed with someone with Plaintiff's current

27   residual functional capacity.   Moreover, even if Plaintiff cannot perform his prior work as a

28   packer, the record needs to be further developed to determine whether Plaintiff could perform

8

1   other work.  As discussed below, the VE's testimony has no evidentiary value because it was

2   ambiguous.  See discussion, infra, Part III.B.

3        Based on the foregoing, the Court finds that the ALJ erred in determining that Plaintiff

4   was capable of performing his past relevant work as a "Packer."  Moreover, for the reasons set

5   forth below, the Court finds that remand is necessary because the record must be further

6   developed to determine whether or not Plaintiff is disabled.

7        **B.        The VE's Testimony Has No Evidentiary Value**

8        Plaintiff argues that Plaintiff should be found to be disabled at Step Five of the analysis

9   based upon the testimony of the VE.  (App. Opening Brief 9-10.)

10       1.        <u>The VE's Testimony As To The Third Hypothetical Presented By Plaintiff Has No
11                 Evidentiary Value Because It Did Not Accurately Reflect Plaintiff's Limitations</u>

12       Plaintiff argues that a disability finding is warranted based upon the VE's response to the

13  third hypothetical, which was presented by Plaintiff's attorney.  Plaintiff asked the VE to assume

14  a person with the following hypothetical limitations:

15  • Can lift 25 pounds occasionally, 15 pounds frequently;

16  • Moderately limited in the ability to perform detailed tasks;

17  • Moderately limited in ability to maintain attention for extended periods of time;

18  • Moderately limited in ability to complete normal work day or work week without
19     interruption from psychologically based symptoms;

20  • Moderately limited in ability to deal with the general public; and

21  • Moderately limited in ability to make realistic goals.

22  (AR 114-115.)  The VE opined that such a person could not perform any work.  (AR 115.)

23       "Hypothetical questions posed to the vocational expert must set out *all* the limitations and

24  restrictions of the particular claimant."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988)

25  (citing <u>Gamer v. Secretary of Health and Human Services</u>, 815 F.2d 1275, 1280 (9th Cir. 1987)).

26  "'If the assumptions in the hypothetical are not supported by the record, the opinion of the

27  vocational expert ... has no evidentiary value.'"  <u>Id.</u> (<u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th

28  Cir. 1984)).

Here, the transcript shows that the VE had difficulty reconciling the different terminology used by Plaintiff's attorney and the ALJ.  The ALJ expressed his hypotheticals in terms of activities that could only be performed "occasionally" whereas Plaintiff's attorney expressed his hypotheticals in terms of areas that were "moderately limited."  It is unclear whether "occasionally" and "moderately limited" were intended to be equivalent, but it appears that the VE interpreted "moderately limited" to represent a more restrictive degree of limitation compared to activities that could be performed "occasionally."  The first hypothetical (presented by the ALJ) and the third hypothetical (presented by Plaintiff's attorney) established limitations in similar categories, but were expressed as "occasionally" by the ALJ and as "moderately limited" by the Plaintiff's attorney.  The VE unequivocally opined that someone with the limitations under the third hypothetical could not perform any work whereas with respect to the first hypothetical, the VE "suggested" that such a person could work as a sexton.

Plaintiff argues that the VE's testimony with respect to the third hypothetical should be controlling because it most accurately mirrors the language used by Dr. Lewin in describing Plaintiff's limitation.  However, the issue is not whether the hypothetical matches a particular doctor's opinion; the issue is whether the hypothetical matches the Plaintiff's actual limitations. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (hypothetical proper if it includes all the limitations that the ALJ found to be credible and supported by substantial evidence).  Here, the hypothetical mirrored the assessment of Plaintiff's residual functional capacity as both were expressed in terms of activities Plaintiff could perform "occasionally."  Plaintiff contends that the ALJ adopted Dr. Lewin's opinion, but this was not the case.  The ALJ afforded "great weight" to Dr. Lewin's opinion and modified Dr. Lewin's language from "moderately" to "occasionally." Plaintiff did not raise the issue as to whether this departure from Dr. Lewin's language was proper.

The limitations established in the first hypothetical are nearly identical to the residual functional capacity as determined by the ALJ.  Accordingly, the first hypothetical was the most appropriate in this case as it most accurately reflected Plaintiff's limitations as determined by the

ALJ.[5]  Since the VE appeared to interpret the third hypothetical as establishing limitations more restrictive than those expressed in the ALJ's residual functional capacity assessment, the VE's opinions with respect to the third hypothetical have no evidentiary value.  Accordingly, the Court finds that the ALJ did not err by failing to adopt the VE's opinions with respect to the third hypothetical.

> 2.    The VE's Testimony As To The First Hypothetical Has No Evidentiary Value Because It Is Ambiguous

Although the ALJ did not err by failing to adopt the VE's opinions with respect to the third hypothetical, the Court finds that, on remand, the ALJ may not rely on the VE's opinions with respect to the first hypothetical because those opinions are ambiguous.[6]  The VE did not clearly state that someone under the first hypothetical could perform work as a sexton.  Instead, after an exchange between the ALJ and VE over what is meant by "non-production pace jobs," the VE said "[l]et me suggest then a job identified as a sexton."  (AR 111.)  It is unclear what the VE meant to convey by "suggesting" a job to the ALJ and the VE never definitively asserted that this job was within Plaintiff's limitations.  The VE further acknowledged that work as a sexton is classified as a "medium" job and that Plaintiff's residual functional capacity was for less than medium, but that "a sexton might very well be available."  (AR 111.)  The Commissioner bears the burden of proving, by substantial evidence, that Plaintiff can perform other work.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The VE's hesitant and equivocal "suggestion" of a job that "might very well be available" does not satisfy this burden.

Moreover, when describing how many jobs as a sexton exist, the VE stated "in a general grouping of janitors and cleaners that is excepting maids and housekeeping, in California, the first

---

[5] The only arguments Plaintiff raised attacking the appropriateness of the residual functioning capacity assessment made by the ALJ was that the ALJ should have adopted the opinions of Dr. Garcia and should have afforded greater credibility to Plaintiff's subjective report and Ms. Scott's third party lay witness report.  Those arguments are rejected below.  See discussion, infra Part III.C and D.

[6] The Court undertakes this analysis in connection with its obligation to determine whether the record is sufficiently well-developed to allow the Court to immediately award benefits, whether the ALJ's error was harmless because the ALJ's non-disabled determination is supported by other evidence in the record, or whether remand is necessary to further develop the record.  See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (remand appropriate if enhancement of the record would be useful).

1    quarter of 2011, there were 13,267 persons employed at the light physical demand." (AR 111.)

2    The response requires further clarification because, assuming that jobs as a sexton is a subset of

3    the general grouping of jobs as janitors and cleaners, the number of jobs that exist for the larger

4    general grouping of jobs as janitors and cleaners is not sufficient to support the conclusion that a

5    significant number of jobs as a sexton exist in the economy that Plaintiff can perform.  Nothing in

6    the record clearly identifies the number of jobs as a sexton that exist in the economy and the VE

7    did not opine that Plaintiff can perform all the jobs that exist in the general grouping of jobs as a

8    janitor and cleaner.

9        Accordingly, on remand, the VE's opinion with respect to the first hypothetical presented

10   by the ALJ should not be relied upon and the record should be further developed, if necessary, to

11   determine whether Plaintiff can perform any other work that exists in significant numbers.

12       **C.      The ALJ Did Not Err In Failing To Adopt The Opinion Of Dr. Garcia**

13       Plaintiff argues that the ALJ erred by failing to adopt the opinions of Dr. Garcia.  (App.

14   Opening Brief 10-13.)  Dr. Garcia was Plaintiff's treating physician.

15       "By rule, the Social Security Administration favors the opinion of a treating physician

16   over non-treating physicians."  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  "If a treating

17   physician's opinion is 'well-supported ... and is not inconsistent with the other substantial

18   evidence in [the] case record, [it will be given] controlling weight."  Id. (quoting 20 C.F.R. §

19   404.1527(d)(2)).   Even if a treating physician's opinion is not given controlling weight, the

20   opinion is still entitled to deference and the ALJ must consider specified factors in determining

21   the weight it will be given, including (1) the length of the treatment relationship and the

22   frequency of examination and (2) the nature and extent of the treatment relationship.  Id. (quoting

23   20 C.F.R. § 404.1527(d)(2)(i)-(ii)).   Additional factors relevant in evaluating the weight of any

24   medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence

25   that supports the opinion and the quality of the explanation provided, (4) the consistency of the

26   medical opinion with the record as a whole, (5) the specialty of the physician providing the

27   opinion, (6) and other factors such as the degree of understanding a physician has of Social

28   Security disability programs and their evidentiary requirements and the physician's familiarity

12

1     with other information in the record.  Id. quoting 20 C.F.R. § 404.1527(d)(3)-(6)).

2          If a treating physician's opinion is not contradicted by another doctor, it may only be

3     rejected for clear and convincing reasons supported by substantial evidence.  Id. at 632 (quoting

4     Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  Even if the treating physician's opinion is

5     contradicted by another doctor, it may not be rejected unless the ALJ provides specific and

6     legitimate reasons supported by substantial evidence.  Id. (quoting Reddick, 157 F.3d at 725).

7     The conclusions of an examining physician cannot in and of itself constitute "substantial

8     evidence" to reject a treating physician's opinions if both opinions are based upon the same

9     clinical findings.  Id.  However, if the examining physician provides independent clinical findings

10    that differ from the findings of the treating physician, the examining physician's opinion may

11    constitute substantial evidence to reject the treating physician's opinion.  Id. (quoting Miller v.

12    Heckler, 770 F.2d 845, 849 (9th Cir. 1985)).

13         Dr. Garcia filled out a Residual Functional Capacity Questionnaire on November 17,

14    2011.  (AR 979-983.)  Dr. Garcia wrote that he first saw Plaintiff on October 1, 1999 (AR 979)

15    but this appears to be a typo and should be October 1, 2009.[7]  Isolating the differences from Dr.

16    Garcia's report and the residual functional capacity as determined by the ALJ, Dr. Garcia opined

17    that Plaintiff suffered from more restrictive:

18         1)  Lifting and carrying limitations (less than 10 pounds frequently and 10 pounds

19              occasionally vs. 15 pounds frequently and 25 pounds occasionally);

20         2)  Sitting/standing/walking limitations (15 minutes at a time, less than 2 hours cumulatively

21              vs. 6 hours cumulatively);

22         3)  Concentration limitations (concentration for 15 minutes at a time vs. "would be off pace if

23              extensive attention is required);

24    / / /

25    _____

26    [7] Dr. Garcia wrote that he last saw Plaintiff on January 11, 2011, saw Plaintiff approximately every three months, and saw Plaintiff a total of eight times, thus the 2009 date makes more sense.  (AR 979.)  Further, Plaintiff indicates that Dr. Garcia made a similar typographical error elsewhere when he indicated that Plaintiff's disability onset date

27    was October 1, 1999 but should have been October 1, 2009.  (App. Opening Brief 10.)  It is unclear how or why Dr. Garcia mistakenly wrote 1999 instead of 2009 in two separate places in his report.  The earliest record of any visit

28    with Dr. Garcia took place on October 1, 1999.  (AR 909.)

4) Stress limitations (incapable of low stress jobs vs. no limitation with respect to stress levels);

5) Head turning limitations (can only occasionally look down, left, right, up or hold his head in a static position vs. no limitation in head turning);

6) Climbing limitations (frequently vs. occasionally);

7) Reaching, handling and fingering limitations (significant limitations vs. no limitations);

8) Limitations in terms of needing unscheduled breaks throughout the work day (every 20 minutes to walk around and additional unscheduled breaks six times a day for 15 minutes each vs. no unscheduled breaks);

9) Limitations in terms of postural repositioning (needing a job that permitted shifting positions vs. no limitations); and

10) Limitations in terms of missing time from work as a result of his impairments (at least four days per month vs. no limitations).

The ALJ gave little weight to Dr. Garcia's report. (AR 24.) The ALJ noted that the "checklist-style forms appear to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. (AR 24.) "Dr. Garcia ... did not provide objective clinical or diagnostic findings to support the functional assessment." (AR 24.) The ALJ also noted that Dr. Garcia's opinion was inconsistent with the objective findings elsewhere in the record. (AR 24.)

Significantly, Dr. Garcia did not provide any response to the question "[i]dentify the *clinical findings*, laboratory and test results and objective signs which show your patient's medical impairments." (AR 980 (italics in original).) Moreover, Dr. Garcia's own records from Plaintiff's visits do not document any objective clinical findings that corroborate the limitations found by Dr. Garcia. The record includes notes from a visit on January 11, 2011 where Dr. Garcia stated that Plaintiff "came for Functional Capacity testing evaluation." (AR 984-985.) There does not appear to be any objective clinical findings in this report that supports the limitations expressed in Dr. Garcia's report. Under "Physical findings," the values reported fell within "Normal Range" except for Plaintiff's blood pressure (130/70 vs. a normal range of 100-

14

120/60-80) and body mass index (30.8 vs. 18-25).  (AR 984.)  It does not appear that Dr. Garcia performed any objective testing of Plaintiff's range of motion, motor strength or other similar physical testing.

The record also includes notes from a visit on December 13, 2010.  (AR 986-987.)  Dr. Garcia again noted that Plaintiff "came to FU [follow up] for disability papers."  (AR 986.)  The objective clinical findings on December 2010 were similar to those reported in January 2011.  (AR 986.)  Dr. Garcia also completed a "Medical Report" that indicated that Plaintiff suffers from "a physical or mental incapacity that prevents or substantially reduces his/her ability to care for his/her children."  (AR 977.)  Dr. Garcia opined that the condition was "[t]emporary, expect to release patient for full-time work on 12/31/11."  (AR 977.)  Dr. Garcia also indicated an "[o]nset date" of 2007.  (AR 977.)  Oddly, Dr. Garcia did not provide a response to the question that asked if Plaintiff has "a physical or mental incapacity that prevents or substantially reduces his/her ability to work full time at his/her customary job?"  (AR 977.)

Treatment records from Dr. Garcia dated October 1, 2009 (AR 909), March 25, 2010 (AR 907-908), and August 26, 2010 (AR 905-906) do not include any objective clinical findings supporting the physical limitations expressed in Dr. Garcia's November 17, 2011 report.

The Court finds that the ALJ did not err in rejecting Dr. Garcia's opinions.  The ALJ's decision to reject Dr. Garcia's opinions was supported by the six factors relevant in evaluating the weight of that should be afforded to a treating physician's opinion.  The first factor, the length of the treatment relationship and the frequency of examination, weigh in favor of rejecting Dr. Garcia's opinion.  Plaintiff saw Dr. Garcia for a short period spanning a year and three months, and the last two visits appear to be solely for the purpose of getting paperwork to support Plaintiff's Social Security application.

The nature and extent of the treatment relationship weighs in favor of the ALJ's decision to reject Dr. Garcia's opinion.  The December 2010 and January 2011 visits were specifically for the purpose of obtaining "disability papers" and for "Functional Capacity testing evaluation."  The ALJ correctly discredited Dr. Garcia's opinion because it appeared to be "an accommodation to the claimant."

1    The amount of relevant evidence and the quality of the explanation provided were both

2    low.  Dr. Garcia failed to identify any evidence supporting his opinion.  The checklist report was

3    conclusory and brief.  The ALJ may reject a treating physician's opinion if it is conclusory, brief

4    and unsupported by the record as a whole.   Batson v. Commissioner of Social Security

5    Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).  In Batson, the ALJ properly rejected a

6    treating physician's opinions because it was expressed in the form of a check list, did not have

7    supportive objective evidence, was contradicted by other statements and assessments of the

8    claimant's physical condition and was based on the claimant's subjective descriptions of pain.

9    Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).

10   The same could be said of Dr. Garcia's report.  Dr. Garcia's report also erroneously indicated that

11   he had first seen Plaintiff on October 1, 1999.  While the Court may normally disregard this as a

12   mere typographical error, the same error appears twice in Dr. Garcia's report.  Two errors in the

13   same report with respect to the same date raises questions as to the quality and accuracy of the

14   report.

15   Dr. Garcia's report is not consistent with the record as a whole.  As noted above, Dr.

16   Garcia's treatment records do not document any significant physical impairments or limitations.

17   Dr. Garcia's treatment records do not cite any objective clinical findings supporting the findings

18   in his report.  The Court also notes that Dr. Garcia failed to explain why, in December 2010, he

19   opined that Plaintiff suffered from a temporary period of disability that is only expected to last

20   twelve months, yet in January 2011 opined that Plaintiff's disability is expected to last more than

21   12 months.

22   Dr. Garcia's report suffers from an apparent internal contradiction, as Dr. Garcia opined

23   that Plaintiff could not walk less than two hours out of an eight hour day, yet also opined that

24   Plaintiff must receive breaks every 20 minutes to walk for 10 minutes at a time.  If Plaintiff

25   received a 10 minute walking break every 20 minutes in an eight hour day, Plaintiff would have

26   walked for 2 hours and 20 minutes, which would exceed the less than two hour limitation Dr.

27   Garcia established.   Moreover, Dr. Garcia's opinion that Plaintiff suffered from significant

28   limitations is belied by the fact that Dr. Garcia never recommended a course of treatment

consistent with the opinion in his report.  For example, Dr. Garcia opined that Plaintiff suffered from pain severe enough to occasionally interfere with the attention and concentration needed to perform even simple work tasks.  Yet the only pain medication prescribed was Ibuprofen (600mg once a day).  (AR 978.)  It does not appear that Dr. Garcia ever prescribed any other treatment for Plaintiff's physical limitations, as the remaining medications were for Plaintiff's depression (Abilify), anxiety (Zoloft) and restlessness (Visterol).  (AR 978.)  Notably,   Dr. Garcia's opinions regarding Plaintiff's limitations is markedly more restrictive than those provided by the other physicians in the record, including Dr. Lewin and Dr. Wlasichuk (AR 853-855).

Dr. Garcia's specialty is unknown.  Accordingly, it is unclear if this factor is particularly relevant in assessing the weight to assign to Dr. Garcia's opinion.

Finally, there is no suggestion that Dr. Garcia is familiar with Social Security disability programs and their evidentiary requirements or that Dr. Garcia was familiar with the other information in the record, weighing in favor of rejecting his opinion.

Based upon the foregoing analysis, the Court finds that the ALJ did not err in rejecting Dr. Garcia's opinions.

### D.     The ALJ Did Not Err In Her Credibility Analysis

Plaintiff contends that the ALJ erred in determining that the testimony of Plaintiff and Ms. Scott was not credible.  (App. Opening Brief 13-15.)

#### 1.     The ALJ Properly Discredited Plaintiff's Reports

The ALJ is required to make a credibility determination that includes findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  "The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom."  Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)).  If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for

1   doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84.)   Factors in weighing a claimant's

2   credibility include (1) ordinary techniques of credibility evaluation such as the claimant's

3   reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony

4   by the claimant that appears less than candid, (2) unexplained or inadequately explained failure to

5   seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily

6   activities. Id. (quoting Smolen, 80 F.3d at 1284.)

7       Here, Plaintiff did not testify at the hearing but did fill out a "Disability Report" that

8   described his impairments and their symptoms.   (AR 192-199.)   Plaintiff described his

9   impairments as "[m]ental problems, back injury, stress and hepatitis c." (AR 193.)   Plaintiff

10   stated that his impairments limit his ability to work because he is "very slow and [has] hepatitis c,

11   can't focus, suffer from mental stress because I got stabbed in the head 11 times, headaches,

12   fatigue and asthma." (AR 193.)   Plaintiff reported that he was taking Benadryl (to help sleep),

13   Depakote (for depression), Geodone (for stress) and Paxil (for stress).  (AR 197.)

14       Plaintiff also filled out a "Function Report" dated February 21, 2009.  (AR 245-252.)

15   Plaintiff reported that during the day he takes medication, eats, walks around the house, but

16   mostly sleeps.  (AR 245.)   Plaintiff reported difficulty working, socializing, interacting with

17   others and communication.  (AR 246.)   Plaintiff also stated that he needs help and needs to be

18   reminded to dress, bathe, care for hair, shave and eat.  (AR 246.)   Plaintiff reported that he cannot

19   prepare his own meals because he is "mentally unstable." (AR 247.)   Plaintiff takes out the

20   garbage when reminded.  (AR 247.)   Plaintiff walks outside twice a day, but does not go out alone

21   because he "need[s] assistance." (AR 248.)   Plaintiff does not drive because he is "mentally

22   unstable." (AR 248.)   Plaintiff does not go shopping.  (AR 248.)   Plaintiff does not pay bills,

23   handle a savings account or use a checkbook because he "feel[s] mentally incompetent." (AR

24   248.)   Plaintiff has no hobbies.  (AR 249.)   Plaintiff indicated that his impairments affect his

25   ability to bend, talk, climb stairs, remember things, complete tasks, concentrate, understand,

26   follow instructions, use his hands and get along with others.  (AR 250.)   Plaintiff can walk one

27   block before needing to rest for five minutes.  (AR 250.)   Plaintiff can pay attention for five

28   minutes.  (AR 250.)   Plaintiff does not finish what he starts, cannot follow written instructions

18

1   and cannot follow spoken instructions very well.  (AR 250.)  Plaintiff cannot handle stress and

2   does not handle changes in routine well.  (AR 251.)

3          The ALJ took Plaintiff's subjective limitations into account in determining his residual

4   functional capacity, except to the extent that they were inconsistent with the final residual

5   functional capacity determination.  (AR 21.)  In this case, it appears that the only subjective

6   complaints disregarded by the ALJ were his limitations in terms of walking, as the remaining

7   limitations are not inconsistent with the residual functional capacity.

8          Plaintiff's reported limitations in walking are not consistent with any of the medical

9   evidence.  The medical records do not reflect any walking limitations as severe as those reported

10  by Plaintiff.  On December 4, 2008, Plaintiff visited the Lindsay Health Care Center and saw Dr.

11  Felix M. Trapse, M.D.  (AR 779.)  Plaintiff did not report any problems walking nor were there

12  any findings indicating issues with walking.  The only problems identified by Dr. Trapse were

13  Plaintiff's Hepatitis C and bipolar disorder.

14         On April 1, 2009, Plaintiff was examined by Dr. Wlasichuk, M.D. for a disability

15  evaluation.  (AR 853-855.)  While Dr. Wlasichuk noted Plaintiff's lower back pain, Dr.

16  Wlasichuk also noted that Plaintiff was not in any acute distress, walks normally and his knee and

17  ankle joints were "[u]nremarkable to examination."  (AR 854-855.)  Dr. Wlasichuk concluded

18  that Plaintiff could stand or walk six hours per day.  (AR 855.)  Dr. Wlasichuk's findings were

19  affirmed by Dr. DeBorja on April 15, 2009.  (AR 878.)  Dr. Garcia provided the most restrictive

20  medical opinion yet still opined to walking limitations less restrictive than those subjectively

21  reported by Plaintiff.  Dr. Garcia not only opined that Plaintiff could walk more than 5 minutes at

22  a time, Dr. Garcia stated that Plaintiff must walk at least ten minutes at a time every twenty

23  minutes. (AR 981.)

24         The record also contains evidence of inconsistent statements and malingering.  On April 7,

25  2009, Plaintiff received a psychological evaluation from Dr. Mary K. McDonald, Ph.D.  (AR

26  858-861.)   Dr. McDonald noted that Plaintiff "was not particularly cooperative with the

27  evaluation and with the last half of the Wechsler Memory Scale, III Edition, he did not exactly

28  refuse the test, he simply stated each time it was presented "I don't remember.  I don't remember.

I can't remember that.  I can't do that."  (AR 859.)  Dr. McDonald also administered the Miller Forensic Assessment of Symptoms Test, "a measure designed to detect exaggeration of mental health issues."  (AR 861.)  Plaintiff received a raw score of 19.  (AR 861.)  Plaintiff "endorsed rare combinations of symptoms, highly unusual hallucinations, extreme symptomatology and symptoms that rarely occur together."  (AR 861.)  "His performance on this test would indicate that he was not cooperative with the testing and was exaggerating his mental health issues."  (AR 861.)  Plaintiff was diagnosed with malingering.  (AR 861.)

Plaintiff's report is also somewhat inconsistent with the Third Party Function Report submitted by Ms. Scott.  Ms. Scott reported that Plaintiff prepares meals, albeit "very seldom[ly]," rides his bike, watches TV, sweeps floors, uses public transportation, shops for groceries and personal items, and engages in social activities, albeit "not much," which are all activities that Plaintiff did not identify in his own report.  (AR 277-234.)  The Court also notes that Ms. Scott identified herself as a fairly recent[8] "friend" of Plaintiff, undermining Plaintiff's claim that he does not engage in any social activities.  (AR 227.)

Based upon the lack of medical evidence corroborating Plaintiff's self reported limitations with walking and the evidence of malingering during Plaintiff's psychological evaluation with Dr. McDonald, the Court finds that the ALJ did not err in determining that Plaintiff was not entirely credible.

2.      The ALJ Properly Analyzed Ms. Scott's Reports

Plaintiff also argues that the ALJ erred in determining that Ms. Scott was not credible.  Ms. Scott submitted a Third Party Function Report dated February 20, 2009.  (AR 227-234.)  Ms. Scott had known Plaintiff for eight months.  (AR 227.)  Ms. Scott reported limitations similar to those reported by Plaintiff.  However, Ms. Scott also identified activities that Plaintiff did not identify in his own report.  Ms. Scott reported that Plaintiff takes his meds, eats, takes a shower, walks, rides his bike, watches TV, and takes naps.  (AR 227.)  Plaintiff "very seldom[ly]" prepares quick meals such as sandwiches.  (AR 229.)  Plaintiff takes out the trash and sweeps

---

[8] Ms. Scott indicated that she had known Plaintiff for only eight months.  (AR 227.)

1    floors.  (AR 229.)  Plaintiff uses public transportation.  (AR 230.)  Plaintiff shops for lunch meat,

2    bread, "hygiene things," food and clothes.  (AR 230.)  Ms. Scott wrote that he was not sure how

3    far Plaintiff could walk before needing rest.  (AR 232.)

4         Similar to the treatment given to Plaintiff's reports, the ALJ discredited Ms. Scott's report

5    only to the extent that they are inconsistent with the ALJ's residual functional capacity

6    assessment.  (AR 21.)  In this case, Ms. Scott's report is not facially inconsistent in any way with

7    the residual functional capacity assessment.  Accordingly, irrespective of the ALJ's skepticism

8    regarding Ms. Scott's credibility, Ms. Scott's report appears to have been accepted as true.

9         Even assuming, for the sake of argument, that the ALJ erred by determining that Ms. Scott

10   was less than credible, such error was harmless because (1) Ms. Scott's report is not inconsistent

11   with the residual functional capacity assessment, and (2) Ms. Scott's report describes limitations

12   less restrictive than those described by Plaintiff and the ALJ properly rejected Plaintiff's

13   testimony.  Plaintiff fails to identify any specific portion of Ms. Scott's report that would have

14   changed the ultimate nondisability determination had Ms. Scott been deemed credible.

15   Accordingly, any error by the ALJ was harmless.  See Molina v. Astrue, 674 F.3d 1104, 1122

16   (9th Cir. 2012) (any error in rejecting lay witness testimony was harmless where lay witness

17   testimony did not describe limitations beyond those described by claimant and ALJ properly

18   rejected claimant's testimony).

19        Additionally, even assuming, for the sake of argument, that the ALJ erred and the ALJ's

20   assessment of Ms. Scott's credibility somehow affected the residual functional capacity

21   assessment, the Court finds that the ALJ did not err in finding Ms. Scott to be less than credible.

22   The ALJ may discount the testimony of a lay witness by providing reasons that are germane to

23   each witness.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If the ALJ gives reasons for

24   rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay

25   witnesses, that would support a finding that the lay witness testimony is similarly not credible.

26   Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

27        The reasons for rejecting Plaintiff's statements apply to discredit Ms. Scott's reports.

28   There is evidence that Plaintiff is a malingerer, which would affect the subjective reports of his

1  limitations made to third parties such as Ms. Scott.  Ms. Scott's function report is inconsistent

2  with Plaintiff's function report, undermining the credibility of both reports.

3      Based on the foregoing, the Court finds that the ALJ did not err in her assessment of Ms.

4  Scott's credibility.

5                                          **IV.**

6                          **CONCLUSION AND ORDER**

7      Based upon the foregoing, the Court finds that the ALJ erred in her determination that

8  Plaintiff could perform his past work as a packer.  The ALJ failed to make specific findings as to

9  the actual demands of Plaintiff's past work and failed to make specific findings as to the

10  compatibility of those demands with Plaintiff's current residual functional capacity.

11      The Court further finds that the testimony of the VE has no evidentiary value because the

12  VE failed to provide a clear opinion with respect to other work that could be performed by

13  Plaintiff.

14      The Court rejects the remaining arguments raised in Plaintiff's brief.  The Court finds that

15  the ALJ did not err by failing to adopt the opinion of the VE with respect to the third hypothetical

16  presented by Plaintiff.  The ALJ did not err by failing to adopt the opinions of Dr. Garcia.  The

17  ALJ did not err in her assessment of Plaintiff's credibility and Ms. Scott's credibility.

18      Finally, the Court finds that remand for further administrative proceedings is necessary to

19  further develop the record and address outstanding issues that must be resolved before a

20  determination of disability can be made.  Accordingly,

21      IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner

22  of Social Security is GRANTED.  The Court REMANDS this action back to the Commissioner

23  for further administrative proceedings consistent with this opinion.

24  //

25  //

26  //

27  //

28

IT IS FURTHER ORDERED that judgment be entered in favor of Plaintiff Arman Aguilar and against Defendant Commissioner of Social Security.   The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 16, 2013**

UNITED STATES MAGISTRATE JUDGE

23